**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HAKEEM HASAN, individually and on behalf of similarly situated individuals, | ) ) ) | |
| *Plaintiff*, | ) ) | No. |
| v. | ) ) ) | |
| AMERICAN HONDA MOTOR CO., INC., a California corporation, | ) ) ) | **JURY TRIAL DEMANDED** |
| *Defendant.* | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Hakeem Hasan, by and through his attorneys, brings this civil action on behalf of himself and other consumers who purchased Honda CR-V vehicles from Defendant, American Honda Motor Co., Inc. ("Honda" or "Defendant"), that suffer from a serious defect in the vehicles' windshield material and/or workmanship ("Windshield Defect"). The Windshield Defect results in premature windshield cracking, compromising the safety of its owner as well as the safety of other drivers on America's roads. Plaintiff, on behalf of himself and similarly situated individuals, now seeks damages and all other available relief for Defendant's wrongful conduct. Plaintiff alleges as follows based on personal knowledge as to his own experiences, and as to all other matters, upon information and belief, including an investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. This case concerns Defendant's manufacturing and sale of Honda CR-V vehicles containing defective windshields prone to spontaneous cracking. The Windshield Defect causes windshield cracking and shattering without any external impact, and as a result, has caused significant reductions to the overall safety, aesthetic appearance, and structural integrity of the vehicles.

1

2.      Like the other members of the putative Class, Plaintiff purchased a Honda CR-V containing the Windshield Defect. Within four months of his purchase, Plaintiff discovered that the windshield of his CRV had inexplicably cracked overnight while it was parked in the open parking lot of his apartment complex. Because he could find no evidence that anything had struck his vehicle, Plaintiff concluded that his windshield had cracked to a defect in its material or workmanship.

3.      Consequently, Plaintiff sought a warranty repair of his windshield damage from Honda Superstore of Lisle, one of Defendant's authorized Honda dealerships. Honda Superstore of Lisle's warranty administrator agreed with Plaintiff that the crack was a stress crack due to a defect, rather than a crack caused by an external impact. However, Defendant refused to provide a repair under warranty, even though it warrants that it will repair broken, chipped, and scratched window glass due to defects in material and/or workmanship, and even though Honda Superstore of Lisle's warranty administrator communicated to Defendant that Plaintiff's windshield crack was stress-related and not caused by an external impact.

4.      Plaintiff is not alone in his frustration with Defendant's refusal to acknowledge the Windshield Defect and refusal to provide the repairs it agreed to provide in its written warranties. As shown by numerous public complaints and grievances made by other Honda CR-V owners, Defendant systematically refuses to honor its warranty obligations with regards to the Windshield Defect.

5.      The Windshield Defect poses an extreme safety hazard to drivers, passengers, and pedestrians. Windshield cracks and splintering impair the driver's view and cause driver distraction. In the event of a collision, weakened and dislodged glass can cause cuts, eye damage, and other injuries. In addition, especially due to other safety features installed in Defendant's CR-

Vs which require clear windshields in order to operate normally, windshields are a vital component of vehicles' passenger protection system. Structurally-sound windshields are necessary to keep vehicle occupants within the relative safety of the passenger compartment during collision or roll over.

6.      In addition to these obvious safety hazards, the cost to repair the effects of the Windshield Defect can be exorbitant, requiring consumers to pay significant sums over the life of their CR-Vs.

7.      Defendant has manufactured, supplied, and sold thousands of CR-Vs without disclosing the Windshield Defect to consumers. Even when consumers submit their vehicles to Defendant's authorized dealers and service technicians for warranty repairs, Defendant denies that the Windshield Defect exists and asserts that any cracks are impact-caused.

8.      Despite notice and knowledge of the Windshield Defect from the numerous complaints received from customers, repair data provided by its authorized dealers, and its own internal records – including pre-sale durability testing – Defendant has concealed the Windshield Defect's existence, has not recalled affected CR-Vs to repair the Windshield Defect, has not offered consumers a suitable repair or replacement free of charge, and has not offered to reimburse consumers who have incurred out-of-pocket costs to repair the Windshield Defect.

9.      Had Plaintiff and the members of the Class and Subclass defined herein known of the Windshield Defect at the time of purchase, including the safety hazard posed by the Windshield Defect and the cost of repair, they would not have purchased their Honda CR-Vs, or would have paid much less for them. As such, Plaintiff and the members of the Class have not received the value for which they bargained when they purchased their CR-Vs.

10.     Accordingly, Plaintiff brings this action on behalf of himself and similarly-situated

consumers to redress Defendant's violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, Defendant's breach of the express and implied warranties it provided in connection with the sale of its CR-Vs, and for Defendant's violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, *et seq.*

## JURISDICTION AND VENUE

11. This Court has diversity jurisdiction under 28 U.S.C. § 1332(d), because (i) at least one member of the putative class is a citizen of a state different from any Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to the instant action.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because Defendant transacts business in this District, and because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, as Plaintiff purchased his vehicle in this District.

## PARTIES

13. Plaintiff Hakeem Hasan is a citizen and resident of the State of Illinois.

14. Defendant American Honda Motor Co., Inc. is a California corporation with its principal place of business in Torrance, California. Defendant is registered to do business in Illinois. Defendant designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles (as hereinafter defined), throughout the United States, including in this District. Defendant is the warrantor and distributor and/or seller of the Class Vehicles in the United States.

## FACTUAL BACKGROUND

15. Defendant's CR-V model is one of the most popular compact SUV models in the United States, selling among the top three models in that class of vehicle, and is the best-selling

4

vehicle across the Honda lineup.

16.     Although Defendant markets its CR-V's as especially safe vehicles, Defendant's CR-Vs contain windshields that, due to defects in the windshields' material and/or workmanship, spontaneously crack and splinter for no apparent reason, including when parked in an isolated area or in a covered garage.

17.     Unlike tires, batteries, and engine oil, which need regular replacement, windshields are expected to be constructed of sufficiently-durable material to last for the life of the vehicle.

18.     As such, Defendant provides a New Vehicle Limited Warranty at the time of purchase stating that Defendant "will repair or replace any part that is defective in material or workmanship under normal use . . . All repairs/replacements made under this warranty are free of charge." Defendant's New Vehicle Limited Warranty covers new CR-Vs for three years or 36,000 miles. Regarding window glass, including windshields, Defendant warrants that it will repair "broken, chipped, or scratched window glass" if the damage is due to a defect in material or workmanship:

### New Vehicle Limited Warranty

**Time and Mileage Period**

This warranty begins on the date the vehicle is put into use in one of the following ways:

- The vehicle is delivered to the first purchaser by a Honda automobile dealer.
- The vehicle is leased.
- The vehicle is used as a demonstrator or company vehicle.

Your vehicle is covered for 3 years or 36,000 miles, whichever comes first. Some parts may have separate coverage under other warranties described in this book.

**Warranty Coverage**

Honda will repair or replace any part that is defective in material or workmanship under normal use. See Proper Operation on page 35. All repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this New Vehicle Limited Warranty expires.

**This New Vehicle Limited Warranty Does Not Cover:**

- Normal wear or deterioration of any part.
- Cleaning and polishing.
- The adding of any fluids, unless they are needed as part of a warranty repair.
- Broken, chipped, or scratched window glass unless it is due to a defect in material or workmanship.
- Any item concerning your vehicle's general appearance that is not due to a defect in material or workmanship. Cosmetic flaws or minor damage to the body, paint, or other items may occur during manufacture or shipping of your vehicle. If you find any uncorrected flaws or damage on your new vehicle, notify the dealer as soon as possible after delivery.

- Expendable maintenance items (such as filters, or brake pads/ linings) when replaced due to normal wear or customer abuse.

**Limited Warranty Coverage**

- Original equipment batteries for key fobs and remotes are covered for the first 6 months of ownership.
- Original equipment wiper blade inserts are covered for the first 6 months of ownership.
- Wheel balancing and wheel alignment are covered for the first year or 12,000 miles, whichever comes first, unless required as part of a warranty repair.
- Air conditioner refrigerant is covered for the first 2 years or 24,000 miles, whichever comes first, unless required as part of a warranty repair.

Your Warranties in Detail | 9

19.     Defendant's New Vehicle Limited Warranty directs CR-V owners desiring a warranty repair to bring their vehicles to a Honda dealer, and informs them that "if you regularly take your vehicle to the Honda automobile dealer for scheduled maintenance, the dealership personnel will know its history if you need to make a warranty claim":

## Operation and Maintenance of Your Honda

The people at your Honda automotive dealer are fully trained and equipped to efficiently perform scheduled maintenance on your 2018 Honda. However, service at the Honda automobile dealer is not mandatory for continued warranty coverage. You can have scheduled maintenance done somewhere other than your Honda automobile dealer, or you can do the maintenance yourself if you have the tools and skills necessary to correctly service your vehicle.

If you regularly take your vehicle to the Honda automobile dealer for scheduled maintenance, the dealership personnel will know its history if you need to make a warranty claim.

If someone else has been performing the maintenance, you may need to provide evidence that you have properly maintained the vehicle.

This evidence may consist of one or more of these items:

- Copies of repair orders or other receipts that include the odometer mileage and date that the vehicle was serviced. Each receipt should be signed by a qualified automotive service technician.

- A statement that you completed the maintenance yourself, showing the odometer mileage and date you did the work. Receipts for the replacement parts (fluids, filters, etc.) should accompany this statement.

**NOTE:** As an aid for the next owner, keep all maintenance receipts with the vehicle if it is sold.

## How to Get Warranty Service

You should take your vehicle along with proof of the purchase date to a Honda automobile dealer during normal service hours. If your warranty claim is for a remanufactured part or Honda Genuine accessory that was originally installed by a Honda automobile dealer, also bring proof of the vehicle's mileage at the time of installation.

If your vehicle cannot be driven, contact the nearest Honda automobile dealer for towing assistance. **You do not have to pay for towing to the nearest Honda automobile dealer if the failure is covered by any of the warranties in this book.**

**Emergency Repairs**

Honda recognizes that your vehicle could develop a serious problem needing immediate repair at a facility other than a Honda automobile dealer.

Honda will reimburse you for the repair if:

- The repair would normally be covered by one of the warranties in this booklet.

and

- All Honda automobile dealers within 50 miles of the breakdown were closed at the time, or there were no Honda automobile dealers within 50 miles.

and

- The vehicle was immobile, or attempting to drive the vehicle would cause further damage or be unsafe.

For reimbursement, go to any Honda automobile dealer. You must show a copy of the paid receipt, and the replaced part(s). The dealer will reimburse you for the part(s) at the current manufacturer's suggested retail price. You will be reimbursed for labor at a geographically appropriate labor rate for Honda's recommended time allowance.

If you are ever dissatisfied with a warranty service or decision from a Honda automobile dealer, please refer to the Customer Satisfaction section on pages 2-4.

***Consumer Complaints***

20.     Complaints about the Windshield Defect and unexplained windshield cracking in Defendant's CR-Vs fill the pages of online forums dedicated to consumer vehicle repair. For instance, one CR-V owner posted the below complaint on the popular site CarGurus.com:[1]



Asked by GuruT9WQ7 Jun 09, 2018 at 10:22 AM about the 2017 Honda CR-V EX-L FWD
Question type: Maintenance & Repair

Has anyone had their windshield crack for no reason? I have a one year old Honda CR-V with 24K mile on it. All of a sudden, I have 3 small cracks, 1 to 3 inches long, at the bottom of the passenger side. The dealer will not cover it and they want $1,665 to replace it. I appealed to Honda and got the same answer.

21.     Dozens of CR-V owners responded with the exact same complaint:



PhiliHonda answered about a year ago                                          ⚙ ▾

Hi there! I am having the same problem with my Honda CRV 2017. It was bought new last September. Crack appeared from the top down, on the passenger side. I had it replaced, not by the dealer. Now, two weeks later, there is another crack from the bottom up. Some instability in the way the car is designed? What a hassle!

5 people found this helpful.

👍 Mark helpful

---

[1] https://www.cargurus.com/Cars/Discussion-t72374_ds906301 (last visited October 25, 2019).



billyrule answered 10 months ago ⚙ ▾

My windshield just cracked (when turning on windshield defrost)when we had freezing weather. Recall should be issued..or a service campaign.



6 people found this helpful.

👍 Mark helpful



dontbuyCRV answered 9 months ago ⚙ ▾

We have a new 2017 CRV ( Australia) washed the car in 35 deg heat 2 hours later a great big crack from top to centre Passenger side can be seen - as an engineer the only explanation to this is stress caused by bad design where any small shock to glass (temperature or impact) will result in crack/s forming, Honda have a lot explaining to do - dealer has rejected any claim or responsibility

6 people found this helpful.

👍 Mark helpful

CRVer answered 8 months ago ⚙ ▾

I had the same problem with my 2018 honda cr v. It's cracked on the driver side about half way up on the edge. I keep it in the garage so I was surprised when I got in this morning to find a 4 inch crack. It has been very cold here but yesterday the temps were in the 40's. I was hoping Honda or dealership would replace it but it looks like I'll be wasting my time.

6 people found this helpful.

👍 Mark helpful



naimoj answered 8 months ago ⚙ ▾

I have a Honda CRV 2017, bought it in 2017 of Sept. I was driving home, it was 23 degrees and the bottom of my windshield just started cracking. This has to be a Honda flaw in design. I wonder if any attorneys can begin a lawsuit on this?

4 people found this helpful.

👍 Mark helpful



**GuruC85WL** answered 7 months ago

2018 CRV. No signs of any chips. Crack started from the bottom under the black defrost part. Never noticed until the crack started spreading upwards. How do we get a recall campaign started?

9 people found this helpful.

👍 Mark helpful

**Cars5986** answered 7 months ago

Bought CRV in December 2017. I am on my THIRD windshield. This is absolutely ridiculous. Thinking about trading the car in as these windshield issues are counting as claims.

2 people found this helpful.

👍 Mark helpful



**Summiullah** answered 6 months ago

I just got CRV 2019 and just in two weeks got a windshield cracked with no known reason. It's extremely disappointing for me as it seems it's not covered under warranty. Recall is must as the problem seems genuine.

5 people found this helpful.

👍 Mark helpful

**POdCRVOwner** answered 6 months ago

To all: This seems to be an on going issue with windshields on the "2017", "2018" and "2019" CRV models. Document EVERYTHING and keep all receipts. Print out all correspondence with the dealership and Honda HQ. When they are forced to issue a recall on this problem, I intend to get my money back for all expenses plus interest.

2 people found this helpful.

👍 Mark helpful



22.     The complaints above are only a sample of the widespread grievances online

regarding the Windshield Defect in Defendant's 2017, 2018, and 2019 model-year Honda CR-Vs

and complaining of Defendant's refusal to repair damage due to the Windshield Defect under warranty.

23.     While the Windshield Defect's damage to a CR-V's aesthetic appearance is obvious, its effects on the CR-V's other complex safety features are less apparent.

### *Defendant's Honda Sensing System*

24.     Defendant's 2018 CR-V marketing brochure focuses on the vehicle's sophisticated safety features, which include Honda Sensing, a "suite of features that can assist and help you sense things you might miss while driving."



25.     Defendant's 2018 CR-V Owner's Manual further explains that Honda Sensing "employs the use of two distinctly different kinds of sensors, a radar sensor located in the front grille and a front sensor camera mounted to the interior side of the windshield, behind the rear view mirror," and that Honda Sensing actually takes control of certain driving tasks, including vehicle speed and braking:

# Honda Sensing™*

Honda Sensing™ is a driver support system which employs the use of two distinctly different kinds of sensors, a radar sensor located in the front grille and a front sensor camera mounted to the interior side of the windshield, behind the rear view mirror.



The camera is located behind the rearview mirror.

Front Sensor Camera

Radar Sensor

The radar sensor is inside the front grille.

## Adaptive Cruise Control (ACC) with Low Speed Follow (LSF) ⏵P.481

Helps maintain a constant vehicle speed and a set following-interval behind a vehicle detected ahead of yours and, if the detected vehicle comes to a stop, can decelerate and stop your vehicle, without you having to keep your foot on the brake or the accelerator.

## Road Departure Mitigation (RDM) System ⏵P.497

Alerts and helps to assist you when the system detects a possibility of your vehicle unintentionally crossing over detected lane markings and/or leaving the roadway altogether.

## Lane Keeping Assist System (LKAS) ⏵P.501

Provides steering input to help keep the vehicle in the middle of a detected lane and provides tactile and visual alerts if the vehicle is detected drifting out of its lane.

## Collision Mitigation Braking System™ (CMBS™) ⏵P.532

Can assist you when there is a possibility of your vehicle colliding with a vehicle or a pedestrian detected in front of yours. The CMBS™ is designed to alert you when a potential collision is determined, as well as to reduce your vehicle speed to help minimize collision severity when a collision is deemed unavoidable.

26.     As illustrated in Defendant's CR-V Owner's Manuals, proper performance of the Honda Sensing system requires a clear, unobstructed windshield so that the system's camera can detect and accurately analyze light from other vehicles on the road:

# Auto High-Beam System*

Using a camera mounted to the inside of the windshield, this system detects light sources ahead of the vehicle. Depending on the light source, the system automatically switches the headlights to high beam for optimal visibility at night.

**The system operates when:**
- The headlight switch is in **AUTO**.
- The lever is in the low beam position.
- The low beams are on and the system recognizes that you are driving at night.
- The vehicle speed is above 25 mph (40 km/h).

**How it works:**
When the camera detects lights coming from a preceding or oncoming vehicle, the headlights remain in low beam.

When the camera detects no lights coming from a preceding or oncoming vehicle, the headlights change to high beam.

The view angle or distance that the camera can detect lights ahead differs depending on conditions, such as the brightness of the lights and the weather.

■ Auto High-Beam System*

The auto high-beam system determines when to change the headlight beams by responding to the brightness of the lights ahead of your vehicle. In the following cases, the system may not respond to the lights properly:
- The brightness of the lights from the preceding or oncoming vehicle is intense or poor.
- Visibility is poor due to the weather (rain, snow, fog, windshield frost, etc.).
- Other light sources, such as streetlights and electric billboards are illuminating the road ahead.
- The brightness level of the road ahead constantly changes.
- The road is bumpy or has many curves.
- A vehicle cuts in front of you, or a vehicle in front of you is not in the preceding or oncoming direction.
- Your vehicle is tilted with a heavy load in the rear.

If you find the timing of beam changes inconvenient for driving, change the headlight beams manually.

If you do not want the system to be activated at any time when the headlight switch is in **AUTO**, consult a dealer.

If you do not want the system to be activated at any time when the headlight switch is in **AUTO**, consult a dealer or disable the system.
▶ Disabling or Re-enabling the System P. 183

Controls

\* Not available on all models

Continued

181

►►Operating the Switches Around the Steering Wheel►Auto High-Beam System*

**■ To Operate the System**



Headlight Switch

To activate the system, turn the headlight switch to **AUTO** and then set the headlights to low beam. The auto high-beam indicator will come on.

**📖 Light Switches** P. 177

**■ To Operate the System**

For the auto high-beam system to work properly:
- Do not place an object that reflects light on the dashboard.
- Keep the windshield around the camera clean. When cleaning the windshield, be careful not to apply the windshield cleanser to the camera lens.
- Do not attach an object, sticker or film in the area around the camera.
- Do not touch the camera lens.

If the camera receives a strong impact, or repairing of the area near the camera is required, consult a dealer.

If the [📷] message appears:
- Use the climate control system to cool down the interior and, if necessary, also use defroster mode with the air flow directed towards the camera.
- Start driving the vehicle to lower the windshield temperature, which cools down the area around the camera.

If the [📷] message appears:
- Park your vehicle in a safe place, and clean the windshield. If the message does not disappear after you have cleaned the windshield and driven for a while, have your vehicle checked by a dealer.

The high beams remain on unless:
- You have been driving below 15 mph (24 km/h) for an extended amount of time.
- The speed of the vehicle drops below 6 mph (10 km/h).
- The windshield wipers have been running at a high speed for more than a few seconds.
- You enter a well lit location.

The high beams come back on once the condition that caused them to turn off no longer exists.

If needed, you can temporarily turn the high-beams off manually. Turn on the high-beams by pushing the lever forward until you hear a click, or flash the high beams once by pulling the lever towards you. To turn the high beams back on, repeat one of the procedures.

Controls

182

27.     In fact, Defendant's Owner's Manual specifically advises that "scratches, nicks, and other damage to the windshield within the camera's field of vision can cause the system to operate abnormally. If this occurs, we recommend that you replace the windshield with a genuine Honda replacement windshield":

►►When Driving►Front Sensor Camera*

## Front Sensor Camera*

The camera, used in systems; such as RDM, LKAS, ACC with LSF and CMBS™, is designed to detect an object that triggers any of the systems to operate their functions.

### ■ Camera Location and Handling Tips



This camera is located behind the rearview mirror.

To help reduce the likelihood that high interior temperatures will cause the camera's sensing system to shut off, when parking, find a shady area or face the front of the vehicle away from the sun. If you use a reflective sun shade, do not allow it to cover the camera housing. Covering the camera can concentrate heat on it.

■Front Sensor Camera*

Never apply a film or attach any objects to the windshield, the hood, or the front grill that could obstruct the camera's field of vision and cause the system to operate abnormally.
Scratches, nicks, and other damage to the windshield within the camera's field of vision can cause the system to operate abnormally. If this occurs, we recommend that you replace the windshield with a genuine Honda replacement windshield. Making even minor repairs within the camera's field of vision or installing an aftermarket replacement windshield may also cause the system to operate abnormally.
After replacing the windshield, have a dealer recalibrate the camera. Proper calibration of the camera is necessary for the system to operate properly.

Driving

* Not available on all models          *Continued*          **479**

28.     The Windshield Defect and associated spontaneous windshield cracking thus greatly impair critical Honda Sensing features for which consumers bargain for when they purchase their CR-Vs. Defendant is aware that windshield cracking causes its automated driver-assist features to function abnormally.

29.     The cracks forming as a direct result of the Windshield Defect interfere with the Honda Sensing camera's functionality, such that the camera cannot accurately determine vehicle positioning and orientation or identify nearby vehicles, thereby impairing the CR-V's driving support system and increasing the likelihood of collision.

30.     Despite its knowledge of the Windshield Defect due to its pre-sale testing, dealership windshield replacement orders, and consumer complaints, Defendant has done nothing to remedy the Windshield Defect, denied its existence, and refused to honor its warranties to repair

defects in its CR-V vehicles.

## FACTUAL ALLEGATIONS WITH RESPECT TO PLAINTIFF

31.     In January 2019, Plaintiff purchased a new 2018 Honda CR-V (VIN: 5J6RW2H80JL033103) from Honda Superstore of Lisle, one of Defendant's authorized dealerships, located in Lisle, Illinois. One of the reasons Plaintiff decided to purchase a new 2018 CR-V was its supposedly advanced safety features.

32.     In connection with his purchase, Plaintiff received Defendant's New Vehicle Limited Warranty and a copy of Defendant's 2018 CR-V Owner's Manual.

33.     On or about the evening of March 1, 2019, Plaintiff parked his CR-V in the parking lot of his apartment complex. The parking lot is an open space, such that no trees or ledges were overhanging Plaintiff's vehicle. At the time, Plaintiff had owned his CR-V for less than four months and his CR-V had accrued less than 5,000 miles.

34.     The following morning, Plaintiff discovered a large crack in the lower right section of his windshield, on the passenger side. Plaintiff inspected his vehicle and the surrounding area, but discovered nothing that could explain why his windshield had suddenly cracked. At no time prior to discovering this crack did Plaintiff witness the windshield sustain an impact.

35.     On March 5, 2019, Plaintiff brought his CR-V back to Honda Superstore of Lisle in order to obtain a windshield repair under warranty.

36.     The dealership's warranty administrator took the following pictures of Plaintiff's CR-V, evidencing the crack:











37.     After performing standard tests used to determine the cause of a windshield crack, including running a ball-point pen along the windshield's surface to find any pockets caused by an external impact, the dealership's warranty administrator determined that the damage to Plaintiff's CR-V windshield was not caused by any external impact, but rather was a stress crack due to defective materials and/or defective construction.

38.     Accordingly, the dealership's warranty administrator submitted a request to repair Plaintiff's windshield under warranty to Defendant's local District Parts and Service Manager ("DPSM"). Defendant's DPSMs are responsible for reviewing and approving warranty claims for their respective districts.

39.     The dealership's warranty administrator sent pictures of Plaintiff's cracked windshield to Defendant's DPSM, informed the DPSM that he found no signs of impact to Plaintiff's windshield, and informed the DPSM that he considered Plaintiff's windshield crack to be stress-related. The warranty administrator also offered to make arrangements for the DPSM to inspect Plaintiff's windshield damage in person.

40. Rather than investigate Plaintiff's windshield damage in person and perform the same standard tests that were performed by Honda Superstore of Lisle's warranty administrator, Defendant's DPSM summarily rejected Plaintiff's warranty claim without explanation.

41. Frustrated with Defendant's refusal to honor its warranty obligations, the following week Plaintiff brought his CR-V to Safelite AutoGlass in Naperville, Illinois. Safelite AutoGlass specializes in automobile glass repair.

42. The specialists at Safelite AutoGlass came to the same conclusion as the dealership warranty administrator, also informed Plaintiff that the crack in his windshield was "non-impact," and further noted that the crack originated at the edge of Plaintiff's windshield, indicating a common vehicle frame issue which exerts excessive pressure on the windshield's edges, causing stress cracks.

43. Plaintiff subsequently communicated Safelite AutoGlass's findings to Defendant, but was again told that Defendant would not cover his CR-V's damage under warranty.

44. In the time since the Windshield Defect first manifested itself in Plaintiff's windshield, the crack has continued to grow in size, inhibiting his vehicle's sophisticated safety features and exacerbating the risks to Plaintiff's safety and the safety of other drivers.

45. Had Plaintiff known of the Windshield Defect prior to purchasing his 2018 CR-V, he would have chosen to purchase a different vehicle or would have paid substantially less for it.

## CLASS ACTION ALLEGATIONS

46. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff brings this action individually and on behalf of all similarly situated persons as the Court may determine to be appropriate for class certification treatment, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). Plaintiff seeks to represent the following Class

and Subclass of owners of Defendant's 2017-2019 model-year Honda CR-Vs (the "Class Vehicles"):

> The Nationwide Class: All individuals who, within the applicable limitations period, purchased or leased a Class Vehicle in the United States or its Territories.

> The Illinois Subclass: All individuals who, within the applicable limitations period, purchased or leased a Class Vehicle in the state of Illinois.

47. Excluded from the Nationwide Class ("Class") and the Illinois Subclass ("Subclass") are Defendant, Defendant's officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity.

48. Defendant manufactured thousands of vehicles containing the Windshield Defect during the relevant time period, and the Class is reasonably estimated to be in the thousands or tens of thousands such that joinder of all their members is impracticable. The precise number of members of the Class and Subclass is unknown to Plaintiff, but can be ascertained through Defendant's records.

49. There is a well-defined community of interest in the relevant questions of law and fact affecting the putative members of the Class and Subclass.

50. Common questions of law and fact predominate over any individual questions affecting the members of the Class and Subclass, including, but not limited to, the following:

> a. Whether the Class Vehicles and their windshields contain defective materials such that they are not suitable for their intended use;

> b. Whether Defendant misrepresented to Plaintiff and the Class and Subclass members the level of safety offered by the Class Vehicles' advanced features;

21

c.  Whether the fact that the Class Vehicles suffer from the Windshield Defect would be considered material to a reasonable consumer;

d.  Whether, as a result of Defendant's concealment or failure to disclose material facts, Plaintiff and the Class and Subclass members acted to their detriment by purchasing Class Vehicles manufactured by Defendant;

e.  Whether Defendant was aware of the Windshield Defect when it sold the Class Vehicles to Plaintiff and the Class and Subclass members;

f.  Whether the Windshield Defect constitutes an unreasonable safety risk;

g.  Whether Defendant breached express warranties with respect to the Class Vehicles;

h.  Whether Defendant breach implied warranties with respect to the Class Vehicles;

i.  Whether Defendant had a duty to disclose the defective nature of the Class Vehicles and the Windshield Defect to Plaintiff and the Class and Subclass members;

j.  Whether Plaintiff and the Class and Subclass members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

k.  Whether Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act when it sold to consumers Class Vehicles containing the Windshield Defect; and

l.  Whether Defendant has acted with deliberate indifference to the safety risks posed by the Windshield Defect.

51.     With respect to the putative Class and Subclass, Plaintiff's claims are typical of those of the absent members of the Class and Subclass. If brought and prosecuted individually, the claims of each member of the Class and Subclass would require proof of many of the same material and substantive facts and would rely upon the same remedial theories, seeking the same relief.

52.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and Subclass. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclass, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class or Subclass.

53.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(1), in that the prosecution of separate actions by individual members of the Class and Subclass would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the parties opposing the Class and Subclass. Such incompatible standards of conduct and varying adjudications on the same essential facts, proof, and legal theories would also create and allow the existence of inconsistent and incompatible rights within the Class and Subclass.

54.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3), in that common questions of law and fact predominate over any questions affecting only individual members of the Class and Subclass.

55.     Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

> a.     Individual claims by the members of the Class and Subclass would be impracticable, as the costs of pursuing such claims individually would

exceed what any one Class or Subclass member has at stake;

b.   Individual members of the Class and Subclass are unlikely to have an interest in separately prosecuting and controlling any individual actions;

c.   The concentration of litigation of these common claims in one forum will achieve efficiency and promote judicial economy; and

d.   The proposed class action is manageable.

### COUNT I
**Breach of Written Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*
(on behalf of Plaintiff and the proposed Class)**

56.   Plaintiff realleges the foregoing allegations as if fully set forth herein.

57.   Plaintiff and the other Class members are "consumers" within the meaning of 15 U.S.C. § 2310(3).

58.   Defendant is a "supplier" and "warrantor" within the meanings of sections 15 U.S.C. § 2301(4)–(5).

59.   The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

60.   Defendant's New Vehicle Limited Warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

61.   15 U.S.C. §2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with any written or implied warranty.

62.   As discussed herein, Defendant warrants in its New Vehicle Limited Warranty that it will repair vehicle damage due to defects in materials and/or workmanship free of charge within three years or 36,000 miles. Defendant instructs Class Vehicle owners desiring warranty coverage to bring their Class Vehicles to a Honda dealership, whose personnel will determine whether

warranty coverage is justified. However, Defendant disregards the findings and conclusions of its authorized dealerships' personnel and refuses to repair the damage done to the Class Vehicles by the Windshield Defect under warranty.

63.     Additionally, Defendant warrants in its marketing materials and Owner's Manuals that the Class Vehicles are installed with the Honda Sensing system, which is designed to ensure driver and passenger safety.

64.     However, Defendant manufactured, distributed and/or sold Class Vehicles containing the Windshield Defect, which compromises the Class Vehicles' safety systems as discussed herein.

65.     Defendant breached its written warranties to Plaintiff and the Class members as set forth above.

66.     Defendant's breach of its express warranties has deprived Plaintiff and the Class members of the benefit of their bargain, which, among other things, took into account the Class Vehicles' advanced safety features.

67.     The amount in controversy of Plaintiff's individual claim meets or exceeds the sum or value of $25. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

68.     Defendant has been afforded a reasonable opportunity to cure its breach of its written warranties. Defendant was on notice of the Windshield Defect from the complaints and repair requests it received from Class members and its authorized dealerships, as well as from its own internal records relating to customer complaints and records relating to pre- and post-sale quality and durability testing.

69.     As a direct and proximate result of the conduct alleged herein, Plaintiff and the Class members sustained damages and other losses in an amount to be determined at trial. Defendant's conduct damaged Plaintiff and the other Class members, who are entitled to recover actual damages, consequential damages, specific performance, and costs, including statutory attorneys' fees and/or other relief as deemed appropriate.

### COUNT II
**Breach of Implied Warranty under the Magnuson-Moss Warranty Act,
15 U.S.C. § 2301, *et seq.*
(on behalf of Plaintiff and the proposed Class)**

70.     Plaintiff realleges the foregoing allegations as if fully set forth herein.

71.     Plaintiff and the other Class members are "consumers" within the meaning of 15 U.S.C. § 2310(3).

72.     Defendant is a "supplier" and "warrantor" within the meanings of sections 15 U.S.C. § 2301(4)–(5).

73.     The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

74.     15 U.S.C. §2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with any implied warranty.

75.     Plaintiff, as well as the other Class members, contracted with Defendant, through Defendant's agents, to purchase Class Vehicles, and paid significant consideration in the form of the purchase price for the Class Vehicles.

76.     Defendant's statements, representations, and omissions concerning the Class Vehicle's quality, durability, and safety features were directed specifically to Class Vehicle owners and prospective Class Vehicle purchasers, including Plaintiff and the Class members.

77.     Plaintiff and the Class members directly relied on Defendant's representations,

statements, and omissions concerning the Class Vehicles' quality, durability, and safety features when choosing to purchase their Class Vehicles.

78.     As a matter of law, each Class Vehicle comes with an implied warranty of merchantability whereby each vehicle is warranted by Defendant to be of merchantable quality such that it would pass without objection in the trade and is fit for the ordinary purposes for which it was to be used.

79.     However, Defendant breached this implied warranty of merchantability, as the Class Vehicles are not fit for the ordinary purposes for which they are to be used and would not pass without objection with the trade, because at the time they left Defendant's control, they contained the Windshield Defect, which renders the Class Vehicles' windshields prone to spontaneous cracking and shattering, inhibits the ability of the Class Vehicles' owners to operate their Class Vehicles safely by obstructing the view of the driver, and compromises the Class Vehicles' autonomous driver-assistance features, thereby endangering the Class Vehicles' drivers as well as the general public.

80.     Defendant's breach of warranty deprived Plaintiff and the Class members of the benefit of their bargain because the Windshield Defect renders their vehicles unsafe, poses a direct risk of injury to Plaintiff and the Class members in the event of a vehicle collision or rollover, and compromises the Class Vehicles' other valuable safety features.

81.     The amount in controversy of Plaintiff's individual claim meets or exceeds the sum or value of $25. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

82.     Defendant has been afforded a reasonable opportunity to cure its breach of its

written warranties. Defendant was on notice of the Windshield Defect from the complaints and repair requests it received from Class members and its authorized dealerships, as well as from its own internal records relating to customer complaints and records relating to pre- and post-sale quality and durability testing.

83.    As a direct and proximate result of the conduct alleged herein, Plaintiff and the Class members sustained damages and other losses in an amount to be determined at trial. Defendant's conduct damaged Plaintiff and the other Class members, who are entitled to recover actual damages, consequential damages, specific performance, and costs, including statutory attorneys' fees and/or other relief as deemed appropriate.

**COUNT III**
**Breach of Express Warranty**
**(on behalf of Plaintiff and the proposed Class)**

84.    Plaintiff realleges the foregoing allegations as if fully set forth herein.

85.    Defendant breached its express warranties to Plaintiff and the Class members as set forth above.

86.    Defendant's breach of its express warranties has deprived Plaintiff and the Class members of the benefit of their respective bargains.

87.    As a proximate and foreseeable result of Defendant's breach, Plaintiff and the other members of the Class have and/or will sustain damages and loss. These damages include, but are not limited to: the loss of value of their Class Vehicles as a result of the Windshield Defect; expectation damages for Plaintiff and the members of the Class because they did not obtain the benefit of the bargain they struck with Defendant; and any further damages that Plaintiff and the other members of the Class members have or will incur in order to remedy the Windshield Defect.

**COUNT IV**
**Breach of Implied Warranty**
**(on behalf of Plaintiff and the proposed Class)**

88.     Plaintiff realleges the foregoing allegations as if fully set forth herein.

89.     Plaintiff, as well as the other Class and Subclass members, contracted with Defendant, through Defendant's agents, to purchase Class Vehicles, and paid significant consideration in the form of the purchase price for the Class Vehicles.

90.     Defendant's statements, representations, and omissions concerning the Class Vehicle's quality, durability, and safety features were directed specifically to Class Vehicle owners and prospective Class Vehicle purchasers, including Plaintiff and the Class members.

91.     As a matter of law, each Class Vehicle comes with an implied warranty of merchantability whereby each vehicle is warranted by Defendant to be of merchantable quality such that it would pass without objection in the trade and is fit for the ordinary purposes for which it was to be used.

92.     As set forth above, Defendant breached this implied warranty of merchantability.

93.     Defendant's breach of warranty deprived Plaintiff and the Class members of the benefit of their respective bargains.

94.     As a proximate and foreseeable result of Defendant's breach, Plaintiff and the other members of the Class have and/or will sustain damages and loss. These damages include, but are not limited to: the loss of value of their Class Vehicles as a result of the Windshield Defect; expectation damages for Plaintiff and the members of the Class because they did not obtain the benefit of the bargain they struck with Defendant; and any further damages that Plaintiff and the other members of the Class members have or will incur in order to remedy the Windshield Defect.

**COUNT V**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act,**

29

**815 ILCS 505/2**
**(on behalf of Plaintiff and the proposed Subclass)**

95.     Plaintiff realleges the foregoing allegations as if fully set forth herein.

96.     Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act

("ICFA") provides in relevant part that:

> Unfair methods of competition and unfair or deceptive acts or practices, including
> but not limited to the use or employment of any deception, fraud, false pretense,
> false promise, misrepresentation or the concealment, suppression or omission of
> such material fact . . . in the conduct of any trade or commerce are hereby declared
> unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

97.     Plaintiff and the members of the Subclass are "consumers" within the meaning of

Section 1(e) of the ICFA.

98.     Defendant's conduct as alleged herein occurred in the course of trade or commerce.

99.     In manufacturing, selling, and designing the Class Vehicles, and in marketing,

offering for sale, and selling the defective Class Vehicles, Defendant engaged in unfair or

deceptive acts or practices prohibited by the ICFA, including, but not limited to:

a.     By representing in its marketing materials and Owner's Manuals that the Class

Vehicles contain advanced safety features including Honda Sensing, when the

Class Vehicles contain the Windshield Defect which inhibits the accurate

performance of such features;

b.     By informing Class Vehicle owners that Defendant's authorized dealership

personnel will decide when warranty repairs are justified, but summarily rejecting

warranty coverage when such personnel determine that warranty repairs are

necessary; and

c.     By failing to disclose and actively concealing the Windshield Defect from Plaintiff

and the Subclass members, who believed they had purchased an especially safe vehicle containing advanced safety features, but in reality purchased the opposite. Defendant should have disclosed this information because it was in a superior position to know the true facts related to the Windshield Defect due to its pre-sale durability testing of the Class Vehicles, knowledge of consumer complaints regarding the Windshield Defect, and information available only to Defendant concerning the volume of replacement windshields ordered by its authorized dealers.

100.    By including such false representations and omissions in its Owner's Manuals, marketing materials, and other direct communications to Class Vehicle owners and prospective purchasers, Defendant intended that the Class Vehicle owners, such as Plaintiff and the Subclass members, rely on such representations and omissions.

101.    Absent Defendant's misrepresentations and omissions, and had Plaintiff and the Subclass members been adequately informed of the Windshield Defect, they would not have purchased Defendant's Class Vehicles or would have paid significantly less for them.

102.    Plaintiff and the Subclass members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose, because Defendant had exclusive knowledge of the information surrounding the Windshield Defect and did not alert Plaintiff and the Subclass members to such information prior their purchase of their Class Vehicles.

103.    Defendant intentionally misrepresented, and concealed, material facts concerning the Windshield Defect from Plaintiff and the Subclass members in an effort to induce Plaintiff and the Subclass members to purchase the Class Vehicles and to purchase the Class Vehicles at a

higher price than Plaintiff and the Subclass members would have otherwise paid had the defect been properly and appropriately disclosed.

104.    Further, Defendant's false and misleading representations, material omissions, and refusal to remedy the Windshield Defect are each contrary to public policy, immoral, unethical, oppressive, unscrupulous, and cause substantial injury to consumers by exposing Class Vehicle owners and the general public to the dangers of vehicles operating with impaired autonomous driving features, creating catastrophic collision risks. As described herein, Defendant is well aware of the dangers posed by the Windshield Defect's compromise of the Class Vehicles' autonomous-driving safety features.

105.    Because Defendant has refused to remedy the Windshield Defect, Plaintiff and the Subclass members have been left with little choice except to continue driving vehicles with autonomous safety features which may fail at any time without warning.

106.    Though Defendant is aware of the Windshield Defect, and aware of its associated dangers, Defendant has acted with deliberate indifference by failing to take any material step to prevent the catastrophic injury risks posed to Class Vehicle owners and the general public by the Windshield Defect.

107.    Defendant's scheme and concealment of the true characteristics of the Windshield Defect were material to Plaintiff and the Subclass members, as Defendant intended.

108.    Even upon being specifically informed about the scope and extent of the Windshield Defect, Defendant has failed to do anything to remedy the situation, or offer any sort of meaningful compensation to owners of the Class Vehicles.

109.    As a direct and proximate result of Defendant's deceptive and unfair trade practices, Plaintiff and the other Subclass members suffered actual damages, including, but not limited to,

paying excessive amounts for the Class Vehicles, monetary losses associated with the decreased value of their vehicles, and expectation damages associated with not receiving the benefit of their bargains with Defendant.

110.     Defendant's conduct is in violation of the ICFA, and pursuant to 815 ILCS 505/10a, Plaintiff and the Subclass members are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees, injunctive relief prohibiting Defendant's unfair and deceptive conduct going forward, and any other penalties or awards that may be appropriate under applicable law.

WHEREFORE, for the reasons set forth above, Plaintiff, individually and on behalf of similarly situated individuals, requests relief and judgment against Defendant as follows:

a.     An Order certifying the Class and Subclass as defined above;

b.     An award of actual and compensatory damages to Plaintiff and the other members of the Class and Subclass for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

c.     An award of punitive damages for Defendant's misconduct and deliberate indifference to catastrophic injury risks;

d.     An award of reasonable attorneys' fees and costs;

e.     An Order enjoining Defendant from continuing to sell vehicles containing the Windshield Defect; and

f.     Such further and other relief as the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff hereby demands trial by jury on all claims and issues so triable.

Dated: October 25, 2019

Respectfully submitted,

HAKEEM HASAN, individually and on behalf of similarly situated individuals

By: /s/ Timothy P. Kingsbury
    *One of Plaintiff's Attorneys*

Myles McGuire
Eugene Y. Turin
Timothy P. Kingsbury
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
eturin@mcgpc.com
tkingsbury@mcgpc.com

*Attorneys for Plaintiff and the putative Class*